UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cr-81 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| EVAN DIXON, | : | |
| Defendant. | : | |

**ENTRY AND ORDER DENYING DEFENDANT EVAN DIXON'S
MOTION TO SUPPRESS (DOC. 36)**

Under the Second Superseding Indictment, Defendant Evan Dixon ("Dixon") is charged with conspiring to distribute heroin and cocaine in violation of 21 U.S.C. § 846 (Count 1) and possession of a firearm in furtherance of drug trafficking in violation of 21 U.S.C. § 924(c)(1)(A) (Count 5). (Doc. 49.) This case is now before the Court on Dixon's Motion to Suppress (Doc. 36), by which he seeks to suppress statements that he made to police officers after being taken into custody in connection with a reported shooting. On November 23, 2016, the Court held a hearing on the Motion to Suppress and the parties have submitted post-hearing memoranda. (Docs. 38, 39, 41, 50, 56.) For the reasons stated below, the Motion to Suppress is **DENIED**.

  **I.**     **BACKGROUND**

On April 27, 2015, Dayton Police Officer Terry Perdue was dispatched to investigate a shooting involving an off-duty police officer. (Doc. 39 at 5:15-6:12.) After arriving at the scene, Officer Perdue observed two men matching police dispatch's description of men involved in the shooting. (*Id.* at 6:16-7:13.) As Officer Perdue approached the men in his police cruiser, one

man ran away.  (*Id.* at 7:22-8:2.)   Officer Perdue drew his gun and ordered the second man, who was later identified as Dixon, to get on the ground.  (*Id.* at 8:2-4.)   Officer Perdue searched Dixon, placed him in handcuffs, and placed him in the back of his cruiser.  (*Id.* at 8:2-16.)

Officer Perdue was instructed to transport Dixon to the police department's Safety Building to be interviewed by detectives.  As he did not plan to question Dixon, Officer Perdue did not advise Dixon of his *Miranda* rights.  (*Id.* at 9:13-10:10, 14:14-18.)  On the way to the Safety Building, without any prompting from Officer Perdue, Dixon said that he was a victim of the shooting and was asleep in the backseat of the vehicle involved in the shooting.  (*Id*. at 9:1-2, 13:15-23, 18:19-21, 19:3-13.)  Officer Perdue did not say anything to Dixon in response to his statements.  (*Id.* at 9:3-10.)  After arriving at the Safety Building, Officer Perdue took Dixon to an interview room upstairs and removed his handcuffs.  (*Id.* at 10:13-24.)

Dayton Police Detective Thomas Cope and Montgomery County Sheriff's Office Detective Brad Daugherty, partners on a homicide task force, had also responded to the scene of the shooting.  (*Id.* at 24:10 -25:5.)  While there, Detective Cope saw a black Chevrolet Impala with approximately 12 bullet holes, the majority created by bullets entering the vehicle.  (*Id.* at 26:7-27:1.)  Detective Cope spoke with an individual who did not see the shooting, but saw two men exit the vehicle after the vehicle had been shot.  (*Id.* at 28:8-22.)  The witness provided a description of what the men were wearing and said that one of the men had discarded a firearm in the witness's side yard.  (*Id.* at 28:19-29:1.)  Based on his discussions at the scene and the witness's statement, Detective Cope believed that Dixon was a victim of the shooting.  (*Id.* at 33:2-5.)  Accordingly, when Detective Cope learned that Dixon had been detained, he gave instructions to have Dixon taken to the Safety Building to be interviewed as a victim of the shooting.  (*Id.* at 30:14-21.)

When Detectives Cope and Daugherty entered the interview room, Dixon immediately stated that he was a victim because he was in the car and "getting shot at" during the shooting incident. (*Id.* at 36:18-23.) After Dixon made these statements, Detective Cope asked Dixon to tell them what happened. (*Id.*) Dixon said that he and a friend were driving when they noticed a green car tailgating them and driving erratically. (*Id.* at 39:10-22.) After turning onto another street, the green car came around the driver's side of their car and began shooting. (*Id.*) Dixon said that he was in the passenger seat trying to curl up and get onto the floorboard for protection while the driver shot back at the green car. (*Id.*) Dixon also told the detectives that he had a 9-mm gun that he never fired and discarded as he was running away from the vehicle. (*Id.* at 40:9-12.)

Detectives Cope and Daugherty never advised Dixon that he was under arrest or in custody, nor did they advise him of his Miranda rights. (*Id.* at 35:23-36:13.) Detective Cope explained that he questioned Dixon to gather information from the victim of a shooting, not for the purpose of charging Dixon with a crime. (*Id.* at 36:2-6.) The interview room remained unlocked for the duration of the interview and neither of the detectives was armed. (*Id.* at 35:19.) During the interview, Detective Daugherty asked Dixon to consent to a DNA swab and gun powder testing for evidentiary purposes. (*Id.* at 37:19-38:14.) Dixon agreed to the DNA swab, but declined the gunpowder residue test. (*Id.*) After the interview, which lasted approximately thirty minutes, Officer Perdue walked Dixon out of the Safety Building. (*Id.* at 16:1-24.)

**II.   LEGAL STANDARD**

Dixon contends that the police elicited statements from him in violation of his rights under the Fifth Amendment under *Miranda v. Arizona*, 384 U.S. 436 (1966). The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."

3

U.S. Constitution Amendment V. In *Miranda*, the Supreme Court held that a subject must be advised of certain rights, including the Fifth Amendment right against self-incrimination, before law enforcement officers conduct a custodial interrogation. 384 U.S. at 491-99. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977). Two inquiries are essential to determining whether a person is in custody: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Statements made in violation of *Miranda* are not admissible in the prosecution's case in chief. *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

The holding in *Miranda*, however, does not bar admission of a defendant's voluntary statements, meaning statements that are made when the defendant is under no compulsion to speak and has not been subject to questioning. *United States v. Murphy*, 763 F.2d 202, 205 (6th Cir. 1985). The Supreme Court has held:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, ***but whether he can be interrogated*** . . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (emphasis added). Thus, when a defendant chooses to speak to police officers prior to being questioned and without being pressured to do so; his statements are admissible even if he has not been advised of his *Miranda* rights. *Murphy*, 763 F.2d at 205; *United States v. Montana*, 613 F.2d 147, 149 (6th Cir. 1980).

## III. ANALYSIS

Dixon moves to suppress (1) statements taken from or made by Dixon while he was in Officer Perdue's police cruiser, and (2) all other statements from Dixon that were obtained in violation of his Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel, as applicable under the Fourteenth Amendment. (Doc. 36 at 1.) Dixon argues that his statements to Officer Perdue and Detectives Cope and Daugherty cannot be used by the Government because he was in custody from the time that he was handcuffed by Officer Perdue and was never advised of his *Miranda* rights.

In response, the Government states that it "seeks to utilize only the initial statements made to Officer Perdue as well as the initial statements made to Detectives Cope and Daugherty." (Doc. 50 at 2.) Thus, the Government "does not intend to offer in evidence any statements made by Dixon in response to follow-up questioning by the detectives on April 27, 2015." (*Id.*) The Government argues that the statements that it seeks to utilize were unprompted and voluntary, and therefore are not protected by *Miranda*. (*Id.* at 6.) The Government's argument has merit.

Even assuming that Dixon was in custody, his motion still fails because he voluntarily made the statements at issue, not in response to any interrogation. *Murphy*, 763 F.2d at 205. The Supreme Court clarified that interrogation refers to "not only express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 300. Thus, "interrogation, as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* Here, none of the officers made any statements or took any actions that they should have known were likely to elicit an incriminating response from Dixon. *See United States v. Woods*,

5

711 F.3d 737, 740-41 (6th Cir. 2013) (officer's question regarding contents of suspect's pocket at time of arrest was not an interrogation); *United States v. Avery*, 717 F.2d 1020, 1024 (6th Cir. 1983) (police questioning as "part of a routine procedure to secure biographical data to complete the booking process" did not constitute interrogation); *United States v. Montano*, 613 F.2d 147, 149 (6th Cir. 1980) (volunteered statements regarding ownership of suitcase were not the product of a custodial interrogation).  Consequently, the Government is permitted to use Dixon's statements to Officer Perdue and his initial statements to Detectives Cope and Daugherty at trial.

### IV.     CONCLUSION

Dixon's Motion to Suppress (Doc. 36) is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, May 13, 2016.

s/Thomas M. Rose

───────────────────────────
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE